## Bowser and Others *v.* Rendell.

PRINCIPAL AND SURETY.—*Co-Surety.*—*Alteration of Writing.*—A promissory note payable to and at a certain bank was signed by A. and B., the former being the maker, the latter his surety, and delivered by A., for a valuable consideration, to C., who, for the purpose of having it discounted for his benefit at said bank, it having been prepared by A. and B. with that expectation, signed the note as maker, without the knowledge or consent of B., upon the requirement of the officers of the bank, but with the express agreement with said officers that he did so as surety or guarantor to the bank for both the other makers, and not as joint surety with B. After maturity the bank sued A., B., and C., upon the note; C. was "not found;" and judgment was rendered against A. and B. by default, upon their failure to appear. C. paid the bank the amount of the judgment under a promise by the bank to assign it to him.

*Held*, that the signing by C. was not such an alteration of the note as rendered it void as to B.

*Held*, also, that C. was not a co-surety with B.

*Held*, also, that C. was entitled to execution for his benefit on said judgment against A. and B., and, A. having become insolvent, such execution was properly levied for the whole amount thereof upon the property of B.

APPEAL from the Noble Common Pleas.

ELLIOTT, C. J.—This was a suit instituted by Rendell against the Merchants National Bank of Fort Wayne, William C. Childs, Jacob C. Bowser, Joseph R. Prentiss, and Daniel M. Falls, to enjoin the collection of a judgment rendered by the Court of Common Pleas of Noble county, in favor of the Merchants' National Bank of Fort Wayne, against Childs and Rendell. On the final hearing, the court enjoined the collection of one-half of the judgment. From this decree the defendants Bowser, Prentiss, and Falls, who are partners, doing business in the name of "J. C. Bowser & Co.," appeal.

The question presented here is as to the sufficiency of the evidence to sustain the finding and decree of the court. The facts, so far as it is necessary to state them for the purpose of a decision of the question involved, are these:—

In February, 1866, Childs was indebted to J. C. Bowser & Co. in the sum of about eight hundred dollars, on

account, and, in addition thereto, had contracted with them. for machinery not then delivered, and, at the time named; presented to them a note for three thousand dollars, payable. to and at the Merchants' National Bank of Fort Wayne. It was signed by Childs and Rendell, the plaintiff. The note was prepared with the expectation that J. C. Bowser & Co. would procure it to be discounted by the bank. They took the note from Childs at its face, and credited him with the amount of his account, and applied the residue on the contract for machinery. Bowser & Co. presented the note to the bank for discount, but the bank refused to discount it unless they would also sign it. They signed it, accordingly, in their firm name, but with the understanding with the officers of the bank that they did so as sureties or guarantors to the bank for both the other makers, and not as a joint surety with Rendell. It was then discounted by the bank for the benefit of Bowser & Co. When the note matured it was not paid, but was renewed by another note for the same amount, signed by the same parties and with the same understanding. Neither Childs nor Rendell was present when Bowser & Co. signed either of the notes, or when they were discounted. The last named note not being paid at maturity, the bank instituted a suit on it in the Noble Common Pleas Court. Process was duly served on Childs and Rendell, but was returned "not found," as to Bowser, Prentiss, and Falls; and judgment was rendered against Childs and Rendell for the amount of the note and accrued interest. Bowser & Co. subsequently paid the bank the full amount of the judgment and interest, under a promise by the bank to assign the judgment to them. No written assignment of it, however, was ever made. Childs was the principal in the note; Rendell was only his surety. An execution was subsequently issued on the judgment for the benefit of Bowser & Co., which was levied on the property of Rendell, Childs having become insolvent. Rendell was ignorant of the fact that Bowser & Co. had signed eith-

er of the notes until after the rendition of the judgment against him and Childs, which was rendered on their default to appear to the action.

On the 17th of August, 1866, Childs executed to Bowser & Co. a mortgage on certain personal property, to secure the payment of the sum of $1,595.76, for which they hold his three several promissory notes, amounting in the aggregate to that sum, and also to secure the payment of the note on which the judgment against Childs and Rendell was rendered, in reference to which the mortgage recites, "And whereas the said Bowser, Falls, and Prentiss are the indorsers or sureties for the said Childs on a note for the sum of three thousand dollars, dated June 30th, 1866, payable to the Merchants' National Bank of Fort Wayne, sixty days after date thereof, executed by said Childs and one William Rendell and by the said Bowser, Prentiss, and Falls, by their firm name of J. C. Bowser & Co.," &c.

Under the foregoing state of facts the court found that Bowser & Co. were joint sureties with Rendell for Childs, on the note on which the judgment was rendered, and that, having paid the judgment, they were only entitled to recover from Rendell one-half the amount so paid; and rendered a decree perpetually enjoining the collection of one-half of the amount of the judgment from Rendell, and ordering a new execution on the judgment against him for the other moiety, for the benefit of Bowser & Co. The decree further provides that upon the payment by Rendell of one-half of said judgment and interest, the proceeds of the chattel mortgage executed to Bowser & Co. by Childs should first be applied to the payment of the three promissory notes named therein, amounting to $1,595.76, and the residue, if any, should be paid equally to Rendell and Bowser & Co., and that each of the parties should pay one-half the costs of this suit.

It is insisted on the part of Rendell, the appellee, that the finding and decree of the court below should be sustained on two of the grounds stated in the complaint, viz.:

*First,* that the signature of Bowser & Co. to the note, as makers, was a material alteration of it, and that as it was made without the knowledge or consent of Rendell, it rendered the note void as to him, and he is not, therefore, liable to pay any part of the judgment to Bowser & Co.

*Second,* that as Bowser & Co. were liable to the bank as makers of the note, and had paid the amount of the judgment to the bank, it was thereby satisfied and discharged; and if Rendell is liable over to Bowser & Co., their remedy is by an original action, and not by an execution for their benefit, on the judgment in favor of the bank.

These propositions will be examined in their order.

No question is better settled than that a material alteration of a written instrument by one who claims the benefit of it, made without the consent of the party against whom it is sought to be enforced, renders it void. But the question here is, did the signature of Bowser & Co. to the note, under the circumstances, constitute such material alteration? It did not change the nature of the obligation, or otherwise injuriously affect the liability of Rendell upon it. Without their signature he was the sole surety of Childs and liable for the whole debt. If by adding their signature Bowser & Co. became a co-surety with Rendell, he would be benefitted thereby, as, in that case. they would be liable to him for contribution; and if, as they contend, Bowser & Co. signed the note, not as a co-surety with Rendell, but as the surety of both Childs and Rendell, the liability of the latter would be the same with as without their signature.

*Harper v. The State,* 7 Blackf. 61, was a suit on a bond under seal, against several defendants, two of whom, Robinson and Collins, pleaded *non est factum,* and it was shown on the trial that, two years after the execution of the bond by them, it was altered by inserting the names of the other defendants, as co-obligors in the bond, and by adding their signatures to it, without the assent of Robinson and

Collins. It was held, that the bond was thereby rendered void as to them.

That decision, however, was evidently governed by the strict rules of the common law in relation to deeds and other sealed instruments, requiring that they should be complete at the time of execution, and any change or alteration of them afterwards (even in an immaterial part, according to some authorities) rendered them void. See *The State* v. *Polke*, 7 Blackf. 27. But the same strictness does not apply to unsealed instruments. In the present case, Rendell testified that the note was a mere printed blank when he attached his signature to it, and that he signed it as surety for the accommodation of Childs. The signing of the note in blank, and the delivery of it to Childs in that condition, was an implied authority to him to fill it up as he might desire. Rendell understood that the note was to be discounted in bank, and if other sureties were necessary for that purpose, it cannot be questioned that Childs might have procured their signatures to be added, without rendering it void as to Rendell. Childs delivered the note to Bowser & Co. for a valuable consideration, and they transferred it to the bank for their own benefit, and in doing so attached their signatures to it as makers. If, however, they had signed it on the back as guarantors or indorsers, no one would contend that it thereby would have been rendered void as to Rendell; and yet the effect would have been the same as to him, or, at any rate, it would not have bettered his condition.

But we need not pursue the question further. The note, as to Rendell, has passed into judgment. The suit was instituted on it against all the makers (including Bowser & Co.) jointly. Rendell was legally notified of its pendency. The note was valid on its face, and if he had any defense to it, then was the proper time to make it; but he failed to appear, and suffered judgment to be rendered against him by default; and it is now too late to present the defense.

He cannot be permitted to go behind the judgment for that purpose.

But the question remains, does the evidence sustain the finding that Bowser & Co. were co-sureties with Rendell? We do not think it does. As between the makers and the payee, the relation of the parties is fixed by the note itself. As to the payee, the makers are all principals, and equally liable. But the rights and liabilities of the makers amongst themselves depend upon the contract between them, or upon the relation each may sustain to the other and to the transaction. Childs being the principal and the others only sureties, he is primarily liable and bound to refund any payment made by either of the others. But the question here is, as to the relation between Rendell and Bowser & Co., all of whom sustain the relation of sureties to Childs. Sureties may make any contract they please, as between themselves. One surety may thus be exempt from all liability to contribute. Such a contract may be implied from the nature of the transaction and such extrinsic facts and circumstances as tend to show such to have been the intention of the parties. As, if one surety enters into the original contract at the request of the others, there might, as to him, be an implied waiver of the right to contribution; and if compelled to pay the debt he could recover the whole amount from the other sureties. Such an agreement, whether express or implied, may be shown by parol evidence. *Lacy* v. *Lofton*, 26 Ind. 324; *Craythorne* v. *Swinburne*, 14 Vesey, 160; *Sisson* v. *Barrett*, 6 Barb. 199; S. C., 2 Comst. 406; *Robison* v. *Lyle*, 10 Barb. 512.

The case last cited is very similar to the one at bar. There the note was given for money loaned by the payee. It was joint and several in terms, and was signed by five persons as makers; the last of whom, who was the defendant in the case, added the word "security" to his signature. It appeared that the first signer was the principal, all the others being sureties. The second one paid the note, and sued the last one, Lyle, for contribution, and recovered in the lower

court, and Lyle appealed. It was shown upon the trial that the defendant made the application to the payee of the note for the loan, and brought the note to him signed by all the other makers. The payee required him to add his signature as a condition of the loan. The defendant claimed that he signed the note as surety for all the other makers, and, for the purpose of showing that fact, offered on the trial to prove a conversation between himself and the payee at the time of procuring the loan, but the court excluded the evidence. The Supreme Court held the evidence admissible, and reversed the judgment because of its exclusion. In the decision of the question, the court said, in reference to the evidence excluded, "It was a part of the transaction which was the subject of inquiry. It was important to ascertain what was in fact the contract between the defendant and the payee of the note. The defendant's signature did not furnish evidence sufficient to determine that question. It became necessary, therefore, to have recourse to extrinsic evidence. That evidence must, from the very nature of the case, consist of the declarations of the parties at the time of the transaction. The negotiation which resulted in the loan was as much a part of the transaction as the receiving of the money. What was said by the parties was pertinent evidence for the purpose of showing what was the true character of the defendant's contract. Such declarations, made at the time of the transaction, and expressive of its character, motive, or object, are to be regarded, as has been well said, as 'verbal acts, indicating a present purpose and intention,' and are therefore admitted in proof, like any other material facts. They are parts of the *res gestæ*."

In the case before us, Bowser & Co., being the holders of the note, desired it discounted in bank for their own benefit; the bank made it a condition to its discount that they should add their signature to it as makers. They did so, to procure its discount, but with the express understanding between them and the bank that they signed it as sureties for both the other makers, and not as co-sureties with Rendell

for Childs. This understanding was entirely consistent with the relation then existing between them and the other makers of the note. As owners of it, both Childs and Rendell were liable to them as principals, and it is evident that they did not intend to change that relation, by adding their signature to procure it discounted for their own accommodation, and it is clear from the evidence that they did not do so. But it is claimed by the appellee that the recital in the chattel mortgage from Childs to Bowser & Co. is in conflict with the parol evidence on this point. We do not so understand it. The recital was made by Childs and not by Bowser & Co., but we see nothing in it inconsistent with the other evidence and facts in the case.

We conclude, therefore, that the evidence does not sustain the finding of the court.

The only remaining question is, are Bowser & Co. entitled to an execution on the judgment against Childs and Rendell, for their benefit? This question is settled in the affirmative by section 676 of the code (2 G. & H. 309), which provides that when "any person being a surety in any undertaking whatever, has been or shall be compelled to pay any judgment or any part thereof, or shall make any payment which is applied upon such judgment by reason of such suretyship," the judgment shall remain in force for the use of the person making such payment; and after the plaintiff is paid, so much of the judgment as remains unsatisfied may be prosecuted to execution for his use.

The judgment is reversed, with costs, and the cause remanded for a new trial, and further proceedings, not inconsistent with this opinion.

*W. H. Coombs* and *W. H. H. Miller*, for appellants.

*A. Ellison* and *F. Prickett*, for appellee.